**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcus Silving, et al., | No. CV11-0676-PHX-DGC |
| Plaintiffs, | |
| vs. | **ORDER** |
| Wells Fargo Bank, NA, et al., | |
| Defendants. | |

## I.     Motion to Remand.

Plaintiffs move to remand this case to the Arizona Superior Court for Maricopa County (Doc. 20), and all defendants other than First American Title Insurance Company ("First American") oppose (Doc. 26). The motion has been fully briefed (Docs. 20, 26, 30), and the parties did not request oral argument.

Plaintiffs allege that their house was offered for sale at a trustee sale on January 11, 2011, and that Defendant US Bank, N.A. as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2 ("US Bank") bid for the property. Doc. 1-1 at 22. A Trustee Deed was issued and recorded. *Id.* at 22-23. On March 10, 2011, Plaintiffs filed a complaint in Maricopa County Superior Court alleging eleven causes of action. Doc. 1-1 at 28-48. The case was removed to this Court on April 6, 2011 (Doc. 1 at 4), and on May 6, 2011 Plaintiffs moved for remand and attorney fees

(Doc. 20). For the reasons that follow, the Court will deny the motion to remand and the request for fees.

## A. Costs and Fees.

As a prefatory matter, it bears mention that all eleven causes of action in Plaintiffs' complaint were brought under Arizona law (Doc. 1-1 at 28-48), and Defendants' notice of removal asserts federal diversity jurisdiction under 28 U.S.C. § 1332 (Doc. 1 at 2). Plaintiffs do not appear to argue that removal was defective, but rather assert that the Court should abstain from exercising jurisdiction under *Burford* abstention and the *Rooker-Feldman* doctrine.[1] Doc. 20 at 3:10, 100-11; *see* Doc. 30. Plaintiffs cite no case for the proposition that costs and fees may be awarded where remand is based solely on discretionary abstention or a defendant's possible affirmative defense. Therefore, the request for costs and fees is denied.

## B. *Burford* Abstention.

Plaintiffs' starting premise is that "[t]he Ninth Circuit strictly construes the removal statute against removal jurisdiction" (Doc. 20 at 2 (emphasis deleted)), but Plaintiffs have not argued lack of subject matter jurisdiction or a defect in removal. Their sole argument is abstention, a different doctrine. The Ninth Circuit's construction of the removal statute is irrelevant to abstention arguments. *See Kamm v. ITEX Corp.*, 568 F.3d 752, 756 (9th Cir. 2009) ("The Supreme Court has explicitly held that remands based on abstention . . . are not covered by § 1447(c)." (citation omitted)).

The starting presumption in cases of abstention is that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *accord Southern Cal. Edison Co. v. Lynch*,

---

[1] Although *Rooker-Feldman*'s jurisdictional bar, if it applied here, could be construed as a removal defect, Plaintiffs do not assert the doctrine for that purpose. *See* Doc. 20 at 10. *Rooker-Feldman* is not discretionary in the jurisdictional-defect context: where it applies, it deprives a federal court of subject matter jurisdiction. *Southern Cal. Edison Co. v. Lynch*, 307 F.3d 794, 805-06 (9th Cir. 2002) ("[T]he *Rooker-Feldman* doctrine bars direct federal district court appellate review of state court judicial proceedings."). In any event, this order finds below that *Rooker-Feldman* does not apply in this case.

307 F.3d 794, 805-06 (9th Cir. 2002) ("District courts have an obligation and a duty to decide cases properly before them, and abstention from the exercise of federal jurisdiction is the exception, not the rule." (internal quotation marks and citations omitted; alterations deleted)).  A district court nonetheless has discretion to abstain under certain "exceptional circumstances."  *Quackenbush*, 517 U.S. at 731.  Abstention pursuant to *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), which Plaintiffs raise, is available under a narrow set of unique circumstances.  *Quackenbush*, 517 U.S. at 723-726 (narrowing *Burford* to its facts).  The circumstances unique to *Burford* were: (1) the presence of a state regulatory system; (2) "the difficulty of regulatory issues presented"; (3) "the need for uniform regulation in the area"; (4) "the important state interests [the] uniform system of [regulatory] review was designed to serve"; (5) "the detrimental impact of ongoing federal court review," more specifically the concern that the "federal forum threatened to frustrate the purpose of the complex administrative system that [the State] established"; and (6) where remand or dismissal (as opposed to a stay) is requested from the federal court, whether the relief sought by the complaint is "equitable or otherwise discretionary."  *Id*. at 725, 736.  In evaluating the regulatory aspects discussed above, courts look primarily at the actions of the state government that established the regulatory system.  *Id.* at 725.

Plaintiffs' case does not meet the unique circumstances in *Burford*.  Arizona has enacted statutes that govern trustee sales, but has not created a complex regulatory scheme.  Arizona's trustee sale statutes are a far cry from *Burford*'s regulatory scheme which included a state agency (the Railroad Commission) that had "exclusive regulatory authority" over permits for oil drilling in the state, and vested jurisdiction over cases arising from the Commission's decisions in a "single set of state courts, '[t]o prevent the confusion of multiple review' . . . and to permit an experienced cadre of state judges to obtain 'specialized knowledge' in the field."  *Id*. at 723-24 (citations omitted).  Arizona has not crested such a system and has not designated specialized judges to deal with

trustee sale issues. The fact that Arizona has chosen not to implement a complex regulatory scheme suggests that it does not consider trustee sales to present particularly difficult regulatory issues. Furthermore, although enactment of statutes may reflect some desire for uniformity, Arizona appears content to have that uniformity implemented though the statutes as they are applied by a variety of judges.[2]

Plaintiffs argue that many of the issues raised in their complaint are issues of first impression under Arizona law, and that removal by defendants in this case and others is depriving Arizona courts of the opportunity to pass on these important matters of state public policy and create a coherent jurisprudence. Doc. 20 at 6-10. Even assuming for the sake of argument that these assertions are true, and recognizing that federal intrusion into state policy is a valid ground for abstention, the Court is not persuaded that Ninth Circuit precedent would support *Burford* abstention in a diversity action seeking to interpret Arizona trustee-sale statutes under the facts here.[3] *See, e.g., Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 848 (9th Cir. 2005) ("Adjudication of the pertinent issues of California law, including California law concerning whether to defer to insurance insolvency proceedings in other states, will not entail any more federal intrusion into state policy or federal disruption of a state regulatory scheme than in any other diversity case." (emphasis deleted)).

In light of the allegations in this complaint, the present state of Arizona's trustee-sale law, and the *Burford* arguments made by Plaintiffs, this Court will not abstain from

---

[2] The Court need not address other abstention theories for remand because only *Burford* was argued. The Court notes that the *Rooker-Feldman* doctrine is not appropriately characterized as an abstention doctrine – it is more adequately referred to as an affirmative jurisdictional defense in response to collateral attack of a state court judgment in federal court.

[3] Plaintiffs' citation to *Soto v. America's Servicing Co.*, 2009 WL 1872691 at *2 (D. Ariz. June 30, 2009), is inapposite because *Soto* involved a decision to abstain from exercising supplemental jurisdiction after the federal-question claims were voluntarily dismissed. After noting that the case was removed under federal-question jurisdiction and that the plaintiff dismissed the federal-question claims in an amended complaint, the court cited to 28 U.S.C. § 1367(c) as "permit[ting] the district court to decline to exercise supplemental jurisdiction over a claim if all claims have been dismissed over which the court had original jurisdiction." 2009 WL 1872691 at *1-2.

exercising its diversity jurisdiction in this case.  Plaintiffs' motion to remand on this ground is therefore denied.

### C.  *Rooker-Feldman* **Doctrine.**

The motion argues that "[t]he *Rooker-Feldman* doctrine, as applied to a foreclosed deed of trust, essentially provides that a federal court should not engage in an appellate-like review over the state laws and contract rights, pursuant to which the Defendants foreclosed."  Doc. 20 at 11.  The motion also asserts, quoting from *Forde v. First Horizon Home Loan Corp.*, 2010 WL 5758614 at *3 (D. Ariz. Dec. 6, 2010), that recent unpublished decisions of the federal courts have uniformly determined that federal suits seeking the rescission of a mortgage loan contract, or alleging that a lender's malfeasance resulted in a foreclosure, belong in state court.  Doc. 20 at 10.

The "string of recent unpublished decisions" cited in *Forde* involved state judicial actions – including judicial foreclosure.  *Parker v. Potter*, 368 Fed. App. 945 (11th Cir. 2010); *Dempsey v. JP Morgan Chase Bank*, 272 Fed. App. 499 (7th Cir. 2008); *Jacobowitz v. M & T Mortg. Corp.*, 2010 WL 1063895 (3d Cir. 2010); *Battah v. ResMAE Mortg. Corp.*, 746 F. Supp.2d 869 (E.D. Mich. 2010); *Poindexter v. Wells Fargo Bank*, 2010 WL 3023895 (W.D.N.C. 2010).  By contrast, there is no allegation of judicial foreclosure or another state-court judgment in this case.  As *Forde* aptly summarized, *Rooker-Feldman* applies where "(1) there was a state court action; (2) one party lost; (3) judgment was entered in the state court action against the losing party; (4) the losing party commenced a new action complaining of injuries caused by the state court judgment; and (5) the new action invited the district court to review and reject the state court judgment."  2010 WL 5758614 at *4 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).  Plaintiffs' motion fails to establish even one of these elements, let alone all five.  Plaintiffs' motion to remand on this ground is denied. [4]

---

[4] Plaintiffs' reply states that, contrary to Defendants' assertion, *Forde* did not involve judicial foreclosure but was a trustee sale similar to this case.  Doc. 30 at 8.  *Forde* expressly states as part of its conclusion: "Pursuant to the Rooker-Feldman doctrine, the Court should

## II. Motion for Summary Disposition.

Plaintiffs filed a motion for summary disposition of remand against First American in light of its failure to oppose the motion to remand. Doc. 31. First American concedes that it "did not file a separate response or join in its Co-Defendants' response," and agrees to litigate in whatever forum is decided by the Court's ruling on the motion to remand. Doc. 32 at 1. Plaintiffs' reply appears to suggest that even if the Court decides to retain jurisdiction over the claims against the other Defendants, it should remand the claims against First American under LRCiv. 7.2(i). *See* Doc. 32.

Even if First American were deemed to have consented to abstention under LRCiv. 7.2(i) – a conclusion the rule permits but does not require – the Court fails to see how that consent would be dispositive of the Court's decision to abstain. Plaintiffs' motion failed to persuade the Court that abstention is proper under *Burford* and *Rooker-Feldman*. The motion for summary disposition will therefore be denied.

## III. Motion to Dismiss.

Defendants Wells Fargo Bank, N.A., d/b/a America's Servicing Company, U.S. Bank, N.A., as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2, and Mortgage Electronic Registration Systems, Inc. (collectively, "Defendants") move to dismiss the complaint under Rules 8(a), 9(b), and 12(b)(6). Doc. 10.[5] The parties do not request oral argument, and the motion has been fully briefed.

Plaintiffs' complaint asserts eleven causes of action. Doc. 1-1 at 28-48. The

decline to conduct an appellate-like review over the *order authorizing the sale of the real property*." *Forde*, 2010 WL 5758614, *5 (emphasis added). Two paragraphs prior to the conclusion, *Forde* recognized that *Rooker-Feldman* requires "state court action." *Id.* at *4. The "order authorizing the sale" language in *Forde* court is, therefore, a finding that a state-court order had been entered. Plaintiffs' assertion that *Forde* involved no state court action is at odds with the findings in the case. To the extent Plaintiffs suggest the *Forde* court erred in its finding, this Court has no authority to, nor will it, second-guess factual findings in an unrelated action by another judge. The Court need only reaffirm the principle of law that *Rooker-Feldman* requires a state court judgment before it can even be said to colorably apply.

[5] Defendant First American Title Insurance Co. does not appear as a party to the motion to dismiss. Doc. 10 at 1. Therefore, the rulings in Part III of this order do not apply to First American.

Court will address each claim sought to be dismissed below, along with any additional factual allegations relevant to the parties' arguments regarding dismissal. In doing so, the Court will discuss only the arguments it found relevant and grounded in a colorable interpretation of the law.

On any issue of first impression in this diversity action, the Court "must use [its] best judgment to predict" how the Arizona Supreme Court would decide the issue. *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004) (quoting *Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir. 1997)). "In so doing, [the Court] may be aided by looking to well-reasoned decisions from other jurisdictions." *Id.* (*Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980)). As a starting principle, the Arizona Supreme Court has stated unequivocally that trustee sale statutes should be construed in favor of borrowers and that strict compliance with such statutes is required. *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152, 156 (Ariz. 1978).

When analyzing arguments of failure to state a claim to relief under Rule 12(b)(6), the factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

With the above context and principles in the background, the Court turns to the arguments asserted in this case. The motion will be granted in part and denied in part.

### A.    Claim 1 – Declaratory Judgment.

The complaint alleges that Plaintiffs are entitled to an "unwinding" of the trustee sale, including voiding of the following documents: the Substitution of Trustee ("Substitution"), the Notice of Trustee Sale ("NOS"), the Assignment of Deed of Trust ("Assignment"), and the Trustee Deed.  Doc. 1-1 at 28-31.  Moving Defendants make several arguments seeking dismissal.

#### 1.    Remedy vs. Cause of Action.

Defendants argue that this claim seeks declaratory relief, which is a remedy rather than a cause of action.  Doc. 10 at 4.  The complaint expressly asserts, however, that Plaintiffs are entitled to this relief on grounds of equity (*e.g.*, Doc. 1-1 ¶ 87), failure of the documents to comply with statutory requirements (*e.g.*, *id.* at ¶¶ 91, 104), and "breach of contract, misrepresentation, concealment, and fraud" (*id.* at ¶ 103; *accord id.* at ¶¶ 104, 105).  Whether the legal rights asserted are cognizable and, if so, whether they entitle Plaintiffs to the relief, are distinct issues.  The claim alleges legal and equitable wrongs, not simply remedies, and this argument therefore will be rejected.

#### 2.    Waiver Under § 33-811(C).

Defendants argue that A.R.S. § 33-811(C) waives Plaintiffs' "right to challenge the sale on the grounds asserted."  Doc. 10 at 5.  Defendants argue that by having received the NOS and having failed to seek injunction of the trustee sale, Plaintiffs have "waived all objections and defenses to the sale."  *Id.*  Plaintiffs respond that Defendants misread the law and that a foreclosure sale can be unwound notwithstanding § 33-811(C) on grounds of fraud, misrepresentation, concealment, or breach of contract.  Doc. 18 at 7.  Plaintiffs do not appear to maintain that mere failure to follow statutory prescriptions can be a valid ground for voiding the transaction in light of § 33-811(C).  *See* Doc. 18 at 2-7.  Defendants' reply attempts to distinguish the cases cited by Plaintiffs, but offers no Arizona state-court case for the affirmative proposition that equity and breach of contract can never unwind a trustee sale.  *See* Doc. 28 at 4-6.

Section 33-811(C) of the Arizona Revised Statutes reads in part as follows:

> The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33-809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p. m. mountain standard time on the last business day before the scheduled date of the sale.

This provision has been addressed in a number of decisions of this Court, most of which have concluded that it establishes a complete defense to virtually any attack on the sale, including claims of fraud. *E.g.*, *Spielman v. Katz*, 2010 WL 4038838, *3 (D. Ariz. Oct. 24, 2010) (court concluded that plaintiff's claims, including claims of fraud, were barred by § 33-811(C)); *Cettolin v. GMAC*, 2010 WL 3834628, *3 (D. Ariz. Sept. 24, 2010) (reading § 33-811(C) broadly). Unpublished decisions of the Arizona Court of Appeals, which do not constitute binding precedent and cannot be cited as authority under Arizona's rules of civil procedure, give the provision a similarly broad reading. One decision of this Court, *Martenson v. RG Financing*, 2010 WL 334648 (D. Ariz. Jan. 22, 2010), holds that § 33-811(C) does not bar a post-sale action against a trustee for breaching terms of the deed of trust. Another decision, *Herring v. Countrywide Home Loans, Inc.*, 2007 WL 2051394, *5-*6 (D. Ariz. July 13, 2007), declines to rely on § 33-811(C) to dismiss claims that a trustee sale was held in breach of a repayment plan agreement, a contract separate from the deed of trust.

The parties' briefing of this issue, which necessarily is short because of the large number of issues addressed in the motion to dismiss, primarily discusses the previous decisions of this Court. The thoughtful analysis of § 33-811(C) in *Martenson*, however, convinces this Court that additional briefing from the parties is required before the Court can make a fully informed decision. The legislative history of § 33-811(C),[6] the effect of

---

[6] *Martenson* had this to say regarding the origins of present-day § 33-811(C): "The

other provisions in § 33-811, comparable statutes in other states (if any), and the general approach Arizona courts take to statutory construction and to the interpretation of trustee sale statutes should all be considered. As a result, the Court will not grant the motion to dismiss at this stage. In their Rule 26(f) report prepared for the case management conference to be scheduled by separate order, the parties should address when and how this briefing should occur.

### 3. Trustee Deed as Evidence Under A.R.S. § 33-811(B).

Defendants argue that the trustee's deed is "conclusive evidence of compliance with the requirements of the Trustee's Sale." Doc. 10 at 5. Defendants also argue that Plaintiffs' allegations that US Bank was not a purchaser for value without notice, and therefore not eligible for introducing the trustee's deed as conclusive evidence, are implausible. *Id.* Plaintiffs respond by asserting that US Bank was not owed any money (Doc. 18 at 7), but fail to explain how this would establish the plausibility that US Bank failed to pay value when it purchased the property.

Plaintiffs also respond that failing to provide the grantee's name and address as required in the deed renders it deficient. Doc. 18 at 7-8. But this is an issue of fact that the Court will decline to address at the motion to dismiss stage. In light of this assertion, however, the Court will address Plaintiffs' implicit contention that a trustee deed deficient in one respect cannot be conclusive evidence about the fact that required statutory processes were followed for the trustee sale. Defendants reply that under A.R.S. § 33-401(C), "[t]he validity of any deed shall not be affected by any failure to comply with the requirements set forth in this subsection." Doc. 28 at 6.

---

parties have not cited, and the Court has not found, any citable cases interpreting A.R.S. § 33-811(C) after it was amended in May 2002 to include the entirely new subsections (C) and (D). 2002 Ariz. Legis. Serv. Ch. 259 (H.B.2071) (West). The original version of House Bill 2071 did not mention a trustor's waiver of defenses and objections, nor did any of the legislative committee minutes. In fact, subsections (C) and (D) of § 33-811 were added to H.B. 2071 by a Senate floor amendment after the committee hearings were completed. The parties have not presented any legislative history of the 2002 addition of subsection (C), and the Court's own investigation, admittedly preliminary, has yielded nothing directly explanatory of the new subsection." 2010 WL 334648, *8.

As a starting point, A.R.S. § 33-811(B) states in part the following:

> The trustee's deed shall raise the presumption of compliance with the requirements of the deed of trust and this chapter relating to the exercise of the power of sale and the sale of the trust property, including recording, mailing, publishing and posting of notice of sale and the conduct of the sale. A trustee's deed shall constitute conclusive evidence of the meeting of those requirements in favor of purchasers or encumbrancers for value and without actual notice.

This provision draws a distinction between general purchasers and purchasers for value and without notice. In the case of general purchasers, the deed raises a mere presumption of compliance. In the case of purchasers for value without notice, the deed constitutes conclusive evidence. The Court cannot decide what weight to give the trustee deed at this stage of the litigation, however, because US Bank has provided no evidence to show that it is a purchaser for value and without the requisite notice, and does not cite any Arizona case for the proposition that Plaintiffs carry the burden of disproving the defense. Defendants' § 33-811(B) argument is therefore premature, and the motion will be denied without prejudice as to this ground.

### 4. Substantive Arguments for Failing to State a Claim.

The Court will now address Defendants' substantive arguments that Plaintiffs' attacks on various recorded documents fail to state a claim.

### a. Substitution of Trustee.

The complaint asserts several grounds for why the Substitution is invalid. Defendants challenge each.

### (1) Authority to Conduct Business.

Plaintiffs assert that MERS has no authority to conduct business in Arizona and that therefore "any document signed and/or recorded by MERS in Arizona is void[.]" Doc. 1-1 ¶ 89. Plaintiffs have not alleged that MERS signed the Substitution in Arizona. *See also* Doc. 1-1 at 91 (Plaintiffs' exhibit bearing notarization stamp indicating Texas).

Nor have Plaintiffs alleged MERS recorded the Substitution in Arizona. *See also id.* at 90 (Plaintiffs' exhibit bearing recording-requester name as First American Title Insurance Company). Finally, Plaintiffs have not shown that signing or recording a substitution of trustee in Arizona requires registration as a foreign corporation or entity. A.R.S. § 10-1501(B) ("The following activities, among others, do not constitute transacting business within the meaning of subsection A: . . . Creating or acquiring indebtedness, mortgages and other security interests in real or personal property. . . . Securing or collecting debts or enforcing mortgages and security interests in property securing the same."). The Court will dismiss this portion of Plaintiffs' claim.

### (2) Authorization.

The complaint alleges the Substitution is void because the person signing it lacked authority to sign. Doc. 1-1 ¶ 90. It is alleged that the Substitution signer, Chet Sconyers, purports to be a Certifying Officer of MERS, and that Sconyers is in fact with First American. *Id.* On the basis of these facts, the complaint further alleges that Sconyers was not authorized to substitute a trustee on behalf of MERS.[7] *Id.* at ¶ 93:20-22. Defendants appear to challenge the sufficiency and plausibility of these allegations by making three arguments: (1) Plaintiffs fail to allege facts that the signer lacked authority; (2) a signatory is not legally required to attach a letter of authorization; and (3) failure to produce such documentation does not void an appointment, citing to A.R.S. § 33-804. Doc. 10 at 6.

To the extent Defendants suggest that Plaintiffs' allegation regarding Sconyers' authorization is a legal conclusion, such suggestion is not justified by the complaint. Plaintiffs do not allege that absence of a written authorization makes the signature void as a matter of Arizona law; they assert that absence of the authorization paperwork together with Sconyers being employed with First American leads plausibility to their factual

---

[7] Plaintiffs' argument is limited to a lack of authority rather than an assertion that a First American employee was legally prohibited from assigning First American as trustee for MERS while purportedly acting for MERS. Doc. 1-1 at 29 ¶ 90; Doc. 18 at 11-12.

allegation that Sconyers lacked authorization from MERS. The dispositive issue is whether Plaintiffs' allegation is sufficient to meet the plausibility pleading requirements of *Twombly* and *Iqbal*.

Defendants' citation to A.R.S. § 33-804 is unavailing because that statute does not on its face permit trustee assignments by someone other than the beneficiary – it appears to provide no refuge if Plaintiffs prevail in showing that Sconyers was not authorized. The Court concludes that this issue is best addressed on summary judgment after the parties have had an opportunity to present evidence on the question of authorization. The Court will note, however, that § 33-804(D) suggests written authorization is necessary. A.R.S. § 33-804(F) contains a similar written-authorization provision.

### (3)    Beneficiary Identification.

The complaint alleges that the Substitution is void because it states the beneficiary is ASC rather than MERS, that ASC has never been the beneficiary, and that MERS was in fact the beneficiary at the time the Substitution was signed. Doc. 1-1 ¶ 90. Defendants concede that MERS was in fact the correct beneficiary. Doc. 10 at 7:7 (stating that "there is no dispute that MERS was the beneficiary under the Deed of Trust"). Defendants argue that MERS was the party who executed the Substitution and that ASC was the loan servicer who would also have been authorized to execute a substitution pursuant to A.R.S. § 33-804(D). Doc. 10 at 7.

Plaintiffs' response does not argue that identifying the wrong beneficiary in a substitution-of-trustee instrument executed by the correct beneficiary voids the substitution. Doc. 18. Plaintiffs also fail to address the effect of the instrument's purported compliance with the text of the form notice established by A.R.S. § 33-804(D). The Court will dismiss this portion of Plaintiffs' claim.

### b.    Notice of Trustee Sale.

The complaint alleges the NOS is void on two grounds: (1) it is signed by

someone in Texas but notarized in California; and (2) the NOS fails to correctly identify the beneficiary. Doc. 1-1 ¶ 91.

**(1)     Signatory's Physical Location.**

Defendants first argue that Plaintiffs' allegation the signer was physically in Texas at the time of signature is not plausible. Doc. 10 at 7. They argue that a Texas address for First American on the NOS does not necessarily mean the signatory, a First American representative, was physically in Texas. *Id.* Although this is correct as a matter of logic, the signatory purported to act on behalf of a company with a P.O. Box listed in Fort Worth, TX. Doc. 1-1 at 95. The signatory did not list a separate physical location for himself. *Id.* The Court cannot find from these facts that Plaintiffs' allegation that the signer was in Texas is implausible.

Defendants argue in the alternative that even if the signatory was in Texas, such error would not invalidate the sale under A.R.S. § 33-808(E). That statute reads, in part: "Any error or omission in the information required by subsection C or D of this section, other than an error in the legal description of the trust property or an error in the date, time or place of sale, shall not invalidate a trustee's sale." § 33-808(E). Defendants do not cite any Arizona case law for the proposition that "any error" includes a knowing falsity such as the one Plaintiffs allege – that the notary falsely certified the signatory appeared before her in California.

Defendants also argue that the trustee deed raises the presumption of compliance under § 33-811(B). Doc. 10 at 7. Defendants' § 33-811(B) argument is premature for reasons explained above.

In light of the above, this portion of the claim will not be dismissed.

**(2)     Beneficiary Identification.**

Defendants argue that improper identification of the beneficiary does not invalidate the sale, citing § 33-808(E). Doc. 10 at 7. Defendants point out that the entity listed as the beneficiary was actually the loan servicer. *Id.* Therefore, the only issue is

whether a NOS that misstates the name and address of the beneficiary is invalid. A.R.S. § 33-808(E) provides that "[a]ny error or omission" of the name and address of the beneficiary "shall not invalidate a trustee sale." Plaintiff does not respond to this argument. The Court will dismiss this portion of the claim.

### c. Assignment of Deed of Trust.

The complaint asserts several bases for why the Assignment is invalid. Defendants challenge each.

### (1) Authority to Conduct Business.

Plaintiffs assert that MERS has no authority to conduct business in Arizona and that therefore "any document signed and/or recorded by MERS in Arizona is void[.]" Doc. 1-1 ¶ 89. Plaintiffs have not alleged, however, that MERS signed the Assignment in Arizona. *See also* Doc. 1-1 at 101 (Plaintiffs' exhibit bearing notarization stamp indicating Texas). Nor have Plaintiffs alleged MERS recorded the Assignment in Arizona. *See also id.* (Plaintiffs' exhibit bearing recording requester name as being First American Title Insurance Company). Finally, Plaintiffs have not shown that signing or recording an assignment of beneficiary in Arizona requires registration as a foreign entity. A.R.S. § 10-1501(B) ("The following activities, among others, do not constitute transacting business within the meaning of subsection A: . . . Creating or acquiring indebtedness, mortgages and other security interests in real or personal property. . . . Securing or collecting debts or enforcing mortgages and security interests in property securing the same."). The Court will dismiss this portion of Plaintiffs' claim.

### (2) Splitting of Security and Debt.

The complaint alleges that the Assignment purports to assign both the deed of trust and the note, and that MERS had no legal authority to assign the note because it never had possession of the note and it was not MERS's to assign. Doc. 1-1 ¶ 92. Both parties appear to agree that a security and the underlying debt are inseparable: Defendants by citing to A.R.S. § 33-817 ("The transfer of any contract or contracts secured by a trust

deed shall operate as a transfer of the security for such contract or contracts."), and Plaintiffs by citing to *Hill v. Favour*, 84 P.2d 575, 578-79 (Ariz. 1938) ("A mortgage, as distinct from the debt it secures, is not a thing of value nor a fit subject of transfer; hence an assignment of the mortgage alone, without the debt, is nugatory, and confers no rights whatever upon the assignee."). But Plaintiffs' allegation that MERS was not authorized to assign the debt is a legal conclusion not entitled to an assumption of truth. Plaintiffs attached to their complaint an exhibit that alleges the Deed of Trust states in part the following:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Doc. 1-1 at 59. Plaintiffs do not explain, in light of the above language, why MERS lacked the legal capacity to assign the debt.

Plaintiffs' further allegation that the Assignment separates the security from the debt is a legal one, not entitled to a presumption of truth. Plaintiffs' exhibit alleges, for example, that in the Assignment MERS "grants, assigns, and transfers" to US Bank "all beneficial interest under that certain Deed of Trust dated: 10/14/2005 executed by MARCUS SILVING Trustor(s)[.]" Doc. 1-1 at 101. Plaintiffs fail to explain how transferring "all beneficial interest" separates the security from the debt other than to point out that MERS never takes possession of "notes" because it is not a lender (Doc. 18 at 9).

Plaintiffs' error is conflating the concepts of "note" and "debt," which are distinct under Arizona law. *Hill* holds only that the security and the debt are inseparable in Arizona. 84 P.2d at 578-79 ("[A]n assignment of the mortgage alone, without the *debt*, is

nugatory, and confers no rights whatever upon the assignee." (emphasis added)). The paper note is not the debt: it is only evidence of the debt, as is the recorded deed of trust. *See Hill*, 84 P.2d at 578 ("Where there is no written evidence of the debt or obligation, the mortgage is evidence both of the debt and security for its payment."); *Rodney v. Arizona Bank*, 836 P.2d 434, 436 (Ariz. App. 1992) (noting that a promissory note is evidence of a debt for purchase of real property). Therefore, MERS's possession or non-possession of the paper note is not the relevant inquiry. The dispositive question is whether MERS had the right to transfer the lender's beneficial interest in the debt to US Bank. In light of Plaintiffs' exhibits stating that MERS is the nominee for the original "Lender and Lender's successors and assigns," Plaintiffs fail to explain why MERS lacked the capacity to transfer the lender's beneficial interest in the debt. The Court will dismiss this portion of Plaintiffs' claim.

### (3)     Authorization.

The complaint alleges the Assignment is invalid because the person signing it lacked authority to sign. Doc. 1-1 ¶¶ 92-94. It is alleged that the signer, Deeann Gregory, purports to be a certifying officer of MERS, that "MERS has no employees which perform these functions," and that Gregory also claimed to be with First American. *Id.* On the basis of these facts, the complaint further alleges that Gregory was not authorized to assign the interest on behalf of MERS. *Id.* at ¶ 93:20-22.

Defendants appear to challenge the sufficiency and plausibility of these allegations by arguing that (1) a signatory is not legally required to attach a letter of authorization, and (2) the trustee deed raises the presumption that all is in order. Doc. 10 at 8. The Court declines to dismiss this portion of Plaintiffs' claim for the reasons explained above regarding the Substitution signed by Sconyers.

### d.     Trustee Deed.

The complaint alleges that the trustee deed is void because the Substitution, NOS, and Assignment are void. Doc. 1-1 ¶ 101. Because the trustee deed is void, Plaintiffs

assert, the trustee sale must be rescinded. *Id.* Defendants do not appear to make a specific argument other than suggesting that because the Substitution, NOS, and Assignment are valid the trustee deed is also valid, as is the sale. Doc. 10 at 9:10-16.

The Court has ruled it will not dismiss Plaintiffs' claims that the Substitution and Assignment lacked authorization. The Court has also declined to dismiss the claim that the NOS was falsely acknowledged. Therefore, to the extent Defendants argue only that the trustee deed's validity is predicated on the validity of the Substitution, NOS, and Assignment, the Court will not dismiss the trustee-deed claim.

### B. Claim 2 – Quiet Title.

The complaint makes many allegations with regard to this claim, some of which appear to overlap with Claim 1. *Compare* Doc. 1-1 ¶¶ 109-131 *with* Doc. 1-1 ¶¶ 84-108. Plaintiffs essentially assert they are entitled to a ruling that their interest in the property is superior to that of Defendants, and that title be quieted in their names. Doc. 1-1 ¶ 131.

Defendants argue that Plaintiffs cannot establish they are entitled to have title quieted in their names because Plaintiff Silving admits he executed a deed of trust placing title in a trustee, and Plaintiff Bader executed another deed of trust placing title in another trustee. Doc. 10 at 9. Defendants also argue that Plaintiffs admit to defaulting on the loan secured by the deed of trust at issue in this litigation. *Id.* at 9-10. In sum, Defendants' position appears to be that a quiet-title action is not cognizable for plaintiffs who issued a deed of trust to trustees and have not yet paid their debt under the deed of trust.[8] Plaintiffs respond that they meet the cause-of-action requirements of alleging an interest superior to Defendants, and that their debt was paid. Doc. 18 at 12-13. Defendants reply that Plaintiffs' debt-discharge theory is "wholly implausible and cannot defeat dismissal." Doc. 28 at 7.

---

[8] Defendants make other arguments the Court addressed earlier in its order as to Claim 1. Doc. 10 at 10. The Court's reasoning in Claim 1 applies equally to those arguments.

### 1. Plausibility of Discharge of Debt Theory.

*Iqbal* stated a two-pronged approach for plausibility: (1) a court first determines whether an allegation is a statement of fact or a statement of law, and (2) the court then applies its "judicial experience and common sense" to the specific context alleged and determines whether the facts alleged plausibly give rise to an entitlement to relief. *Iqbal*, 129 S. Ct. at 1949-1950.

Plaintiffs' complaint fails to allege who paid their debt, when, or why, and fails to allege any facts that would lead the Court to conclude that such payor intended the payment be made on behalf of Plaintiffs. *See* A.R.S. § 47-3602(A) ("[A]n instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument[.]"). When combined with Plaintiffs' admission that they executed deeds of trust and later defaulted on their debt payments, the allegation that the debt has been paid by or for them is simply not plausible without some supporting facts. The Court will dismiss this portion of Plaintiffs' claim.

### 2. Scope of Quiet Title Actions.

Under Arizona law, an action to quiet title is statutory, but also includes equitable considerations. *Lavidas v. Smith*, 987 P.2d 212, 218 (Ariz. App. 1999). A party bringing a quiet title action must allege that it has an interest in real property and that the interest is adverse to another person who claims an interest in the same property. A.R.S. § 12-1101(A). Moreover, a title holder may have a superior claim to title as to one party and an inferior claim as to another. *See, e.g., Bowen v. Chemi-Cote Perlite Corp.*, 432 P.2d 435, 443 (Ariz. 1967). Finally, title rights can be disaggregated, and the distinct rights of possession or of alienation can also separately and independently be superior or inferior as between parties. *Cf. id.* Therefore, the dispositive issue is whether Plaintiffs have superior claims to specific rights as against Defendants, not whether Plaintiffs' actions (i.e., placing title in trust with a non-party or failing to discharge the debt) would defeat their claim as against everyone in the world and deliver them clear title.

Plaintiffs each admit placing title in trust with a trustee, but those trustees are not the parties against whom Plaintiffs seek to quiet title. As to Defendants' position that a quiet title action is foreclosed to plaintiffs who have not yet discharged their debt, this argument would be persuasive if Plaintiffs sought to quiet title against the beneficiary of the deed of trust. Here, Plaintiffs' quiet title action is brought against ASC, US Bank, and MERS. Under Plaintiffs' theory, ASC and US Bank are not beneficiaries of the deed of trust. Under Defendants' theory, ASC and MERS are no longer beneficiaries (it is unclear whether Defendants maintain US Bank is a beneficiary under the deed of trust or an outright owner of title in fee simple). Therefore, it is possible that Plaintiffs have the right to quiet title as to some Defendants. Because the motion does not seek to dismiss the claim as to specific Defendants, it will be denied without prejudice.

### C. Claim 3 – Breach of Good Faith and Fair Dealing.

In this cause of action, the complaint alleges that all Defendants breached the duty of good faith and fair dealing present in the note and deed of trust. Doc. 1-1 at 34. The breaches are alleged to have occurred when Defendants failed to process loan modification requests as promised; failed to supervise employees during modification and foreclosure processes; failed to provide accurate information regarding loan servicing; demanded information from Plaintiffs which Defendants already had; provided contradictory information regarding modification options; incorrectly determined that Plaintiffs were not eligible for loan modification programs; proceeded with foreclosure while modification was pending; foreclosed in violation of contract terms; concealed that foreclosure will no longer be postponed; hid the identities of the note holder, lender, and beneficiary despite requests for disclosure from Plaintiffs; and foreclosed using defective documents. *Id.* at 35-36.

Defendants argue that Plaintiffs have not stated a claim on which relief can be granted because they "identify no actions any Moving Defendant took to deprive Plaintiffs of the benefits of" the note and deed of trust. Doc. 10 at 11. Defendants also

argue that "Plaintiffs identify no contractual obligation requiring any Defendant to modify the Loan," and therefore plead no facts alleging Defendants breached duties owed Plaintiffs during the loan modification process. *Id.* Plaintiffs respond that an express breach is not required, that manipulating bargaining power in bad faith can be sufficient for a breach of the covenant, and also that Defendants did not follow the law when foreclosing using invalid documents. Doc. 18 at 13-14. Defendants reply in part that the "duty of good faith and fair dealing does not extend to negotiations," and that Plaintiffs fail to show bad faith. Doc. 28 at 7.

Under Arizona law, the covenant of good faith and fair dealing is implied in every contract, and the "duty arises by virtue of a contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986) (citations omitted). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* "[B]ecause a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 29 (Ariz. 2002) (citing *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1270 (Ariz. 1992) and *Rawlings*, 726 P.2d at 573-76).

Defendants move to dismiss this claim against all Defendants without addressing their separate contractual relationships with Plaintiffs. It is clear that some contractual relationships exist, and Arizona law clearly implies a duty of good faith and fair dealing in such relationship. *Rawlings*, 726 P.2d at 569. The Court therefore cannot dismiss this claim against all Defendants.

As to the alleged breach of the covenant with respect to modification negotiations, Defendants appear to argue that the covenant of good faith and fair dealing does not apply to negotiations concerning modification of an existing contract. *See* Doc. 10 at 11-

12. Plaintiffs respond that a breach of the covenant can occur when a party to a contract manipulates its bargaining power, and that "[a] contracting party may not exercise a retained contractual power in bad faith." Doc. 18 at 13. Plaintiffs mention specifically foreclosure pursuant to invalid documents, and make a generalized assertion that the complaint is replete with examples of Defendants manipulating their bargaining power. *Id.*

With regard to Plaintiffs' argument that foreclosing using defective instruments is a violation of the covenant of good faith implied in the deed of trust and note, the Court cannot at this stage conclude that the claim is invalid under Arizona law. *See Rawlings*, 726 P.2d at 569. But Plaintiffs do not identify other contracts that contained an implied covenant, and Defendants are correct in asserting that the covenant of good faith implied in a contract typically does not extend to negotiations. Restatement (Second) of Contracts ("Restatement") § 205 cmt. c ("This Section . . . does not deal with good faith in the formation of a contract."); *see Vera v. Wells Fargo Bank, N.A.*, 2011 WL 334286, *3 n.26 (D. Ariz. Jan. 31, 2011) (citing Restatement § 205 cmt. c).

Because Plaintiffs do not allege a contract other than the deed of trust and note from which the implied covenant of good faith and fair dealing arises, the Court will dismiss all alleged breaches of the covenant other than the covenant implied in the deed of trust and the note. The Court will also dismiss alleged breaches of the covenant implied in the deed of trust and the note other than the allegation that foreclosing using defective instruments violated the covenant.

**D.      Claim 4 – Breach of Contract.**

The claim for breach of contract alleges that Defendants pursued a trustee sale in violation of the contracts, negligently undertook to modify the loan, and breached the covenant of good faith and fair dealing. Doc. 1-1 at 37. Defendants argue that the claim as pled fails to give fair notice of the basis of the claim. Doc. 10 at 12. Plaintiffs respond that they have previously alleged the basis of the claim, and cite to the following

paragraphs in their complaint: 9, 10, 19, 21, 29, 37, 39-45, 47-48, 143-145. Doc. 18 at 13-14. Defendants' reply reasserts that they do not have fair notice. Doc. 28 at 7-8.

Defendants are correct that Claim 4's allegations are unclear as to which contracts are involved and which actions constituted breach, even though the allegations incorporate 140 prior paragraphs. The issue is not the amount of facts cited by the complaint at large, but that Claim 4 lacks clarity as to which promises were breached and how. Plaintiffs argue that the specific paragraphs cited in their response may eliminate some of that confusion, but the complaint must speak for itself and should not need the aid of additional papers to explain its meaning. The Court finds that the only contracts clearly identified in the complaint are the deed of trust and note. Count 4 will be construed as a claim for breach of these contracts, and no others. To the extent Plaintiffs intended Count 4 to state additional claims, those claims will be dismissed for lack of adequate pleading.

### E. Claim 5 – Good Samaritan Doctrine.

The complaint alleges that ASC and US Bank put in place modification and forbearance programs for distressed borrowers, encouraged Plaintiffs to apply, and negligently managed the programs by failing to staff with sufficient and competent people, failing to provide adequate contact methods, failing to provide adequate methods for submittal of information, making repeated requests for the same information, making inaccurate calculations and determinations, failing to follow through on "written, verbal and implied promises," and waiting until less than 24 hours before the trustee sale to make Plaintiffs aware that the sale will proceed rather than be postponed as it was several times before. Doc. 1-1 at 38-39. Plaintiffs also allege that they relied on Defendants to administer the modification and forbearance programs. *Id*. at ¶ 158. Plaintiffs allege that Defendants' negligence resulted in foreclosure, loss of equity, a two-year delay in principal reduction payments, and damages to Plaintiffs' credit rating. *Id. at* ¶ 159.

Defendants argue the claim should be dismissed because "mortgage lenders do not generally have legal duties to borrowers from which negligence claims may arise," and Plaintiffs were not entitled to a loan modification as a matter of law.  Doc. 10 at 13. Defendants rely on *McAlister v. Citibank*, 829 P.2d 1253, 1258 (Ariz. App. 1992), and *Renteria v. United States*, 452 F. Supp. 2d 910, 921-22 (D. Ariz. 2006).  Doc. 10 at 13. Plaintiffs respond that Defendants' legal arguments are not supported by law (Doc. 18 at 14), and Defendants counter (Doc. 28 at 8-9).[9]  The Court concludes that Defendants' cited case law does not support the propositions they seek to establish.

*McAlister* holds only that "the relationship between a Bank and an ordinary depositor, *absent any special agreement*, is that of debtor and creditor."  829 P.2d at 1258 (citing *Valley Nat'l Bank of Phoenix v. Electrical Dist. No. 4*, 367 P.2d 655, 662 (Ariz. 1961)) (emphasis added).  *McAlister* also acknowledged that the Arizona Supreme Court recognized a fiduciary duty between a bank and its customer where "(1) the bank acted as the customer's financial advisor for many (twenty-three) years, and (2) the customer relied upon the bank's financial advice."  829 P.2d at 1258 (citing *Stewart v. Phoenix Nat'l Bank*, 64 P.2d 101, 106-107 (Ariz. 1937)).   In this case, ASC and US Bank are not alleged to be banks in the sense of depository institutions for Plaintiffs' funds.  Moreover, the complaint alleges that special agreements existed.  *E.g.*, Doc. 1-1 ¶ 156 ("Defendants failed to follow through on written, verbal, and implied promises . . . .").  *McAllister* is therefore unavailing for Defendants.[10]

*Renteria*, a case from this district, states plainly that "*Lloyd* [*v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 1300, 1303 (Ariz. App. 1992)] and *Jeter* [*v. Mayo Clinic Ariz.*,

---

[9] Defendants argue for the first time in their reply brief that Plaintiffs' reliance was unreasonable.  Doc. 28 at 8:25-28.  Although Defendants' motion cites to *Renteria* and notes in a parenthetical that the case involved reliance (Doc. 10 at 13), Defendants do not argue unreasonable reliance in their motion.  The Court will therefore disregard this argument.  *See, e.g., Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008).

[10] The Court is not deciding whether mortgage servicers or lenders have a fiduciary relationship with borrowers absent agreements establishing such a relationship.

121 P.3d 1256, 1272 (Ariz. App. 2005)] make clear that the Good Samaritan Doctrine applies to economic harm. Neither of these cases nor any other Arizona authority excepts lending from that authority. The Good Samaritan Doctrine, therefore, is applicable to the Renterias' claims." 452 F. Supp. 2d at 914. The Court fails to see how this holding supports Defendants' argument that mortgage lenders are exempt from the Good Samaritan Doctrine.

Defendants may reassert arguments concerning this claim at the summary judgment stage. At this point, however, the Court must deny Defendants' motion to dismiss on the arguments made.

### F. Claim 6 – Fraudulent Concealment.

The complaint alleges Defendants misrepresented or concealed the fact that they allowed unauthorized signatures on documents recorded for the purpose of foreclosure; they did not have adequate and competent staff to process modification requests; they would demand the same information repeatedly; they would fail to follow through on written and verbal promises and contractual obligations; they would lure Plaintiffs into remaining in default until the trustee sale occurred; they would pursue foreclosure despite a pending modification application; and they were participating in a system that hides the identity of the note holder and lender, sells the note to unknown entities, and other aspects. Doc. 1-1 at 40-41. The complaint clarifies the alleged wrong was preventing Plaintiffs from learning these facts – not engaging in the underlying behavior. *See* Doc. 1-1 ¶¶ 166, 167.

Defendants argue that the claim fails to plead all of the elements of the fraudulent concealment cause of action, and that the claim is not pled with the particularity required by Rule 9(b). Doc. 10 at 13-14. Defendants also argue that Plaintiffs fail to show how the concealment induced them to act to their detriment. *Id.* at 14:9-12. Plaintiffs respond that Defendants cite no law requiring fraudulent concealment be pled with particularity, and that fraudulent concealment can lie when a party is induced to refrain from acting.

For the latter proposition, Plaintiffs cite to *In re Bender*, 2010 WL 6467681 at *9 (9th Cir. BAP Nov. 15, 2010), and urge that Defendants' failure to disclose induced Plaintiffs to "refrain[] from taking legal action to stop the foreclosure." Doc. 18 at 14-15. Defendants reiterate that fraudulent concealment claims must be pled with particularity and that no allegations have been pled that any defendant misled Plaintiffs about the sale date. Doc. 28 at 9.

Although captioned "Fraudulent Concealment," this claim alleges that Defendants both "misrepresented and concealed." Doc. 1-1 at 39:19-20, 40:7. Under Rule 9(b) of the Federal Rules of Civil Procedure, a claim of false representation must be pled with particularity. *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."). Plaintiffs' claim does not state the time and place of the alleged misrepresentations, and the specific content is not present for all alleged statements.[11] Although time, place, and exact excerpts may not always be necessary, Plaintiffs are required to plead what they know with enough specificity. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. . . . The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." (internal quotation marks and citations omitted)).

In addition to the misrepresentation allegations discussed above, the allegations of "concealment" assert that "Defendants prevented Plaintiffs from learning any of these truths" (Doc. 1-1 ¶ 166). Plaintiffs fail to allege with particularity, however, how Defendants went about "preventing" Plaintiffs. Affirmative false statements intended to

---

[11] Plaintiffs' inclusion of exhibits supporting these allegations is not relevant – the complaint itself must contain particularized allegations.

conceal require particularity as discussed above. These requirements are not met by the claim as pled. Accordingly, the claim will be dismissed.

### G.    Claim 7 – Fraud.

The complaint alleges that Defendants misled Plaintiffs about their desire to help with a loan modification and avoid foreclosure. Doc. 1-1 ¶ 169. It is also alleged that Plaintiffs "were misled into believing" that Defendants would not be negligent regarding loan modification, would not foreclose, and would follow the law with regard to the trustee sale, among others. *Id.* at ¶ 170. The complaint recites representations allegedly made to Plaintiffs, *id.* at ¶¶ 171-72, and alleges that the representations were material and false, *id.* at ¶¶ 173-74.

Defendants argue in part that the allegations are not pled with the requisite particularity and do not give them fair notice. Doc. 10 at 15. Plaintiffs appear to respond that they have alleged what they know, and suggest that Defendants "have all the information regarding the loan: who owns it, where the documents are, who the investors are, whether the Note was destroyed, lost, or sold to multiple entities, why a loan modification application was ignored, and the list goes on." Doc. 18 at 15. Plaintiffs suggest that the Ninth Circuit has relaxed pleading requirements in cases where "plaintiffs cannot be expected to have personal knowledge of the facts." Doc. 18 at 15. Plaintiffs request leave to amend if the Court finds the claim inadequately pled. *Id.* at 16:3-4. Defendants' reply maintains that the lower pleading threshold does not apply because Plaintiffs should have the details about who made representations, when, etc. Doc. 28 at 9-10.

Rule 9(b) requires allegations of fraudulent representations be pled with particularity. *Schreiber*, 806 F.2d at 1401 ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."). Plaintiffs' claim fails this test: other than the general content of alleged misrepresentations, Plaintiffs fail to identify

the speakers of the false statements, the timeframes when these statements were made, specific content such as excerpts from communiqués, or other information to satisfy Rule 9(b). Furthermore, Plaintiffs' reliance on *Neubronner* is misplaced. In that case, the Ninth Circuit stated: "This court has held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs [cannot] be expected to have personal knowledge of the relevant facts. . . . *However, this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief.*" 6 F.3d at 672 (emphasis added; citations omitted). Plaintiffs' lack of access to some facts does not excuse failure to adequately plead the facts they do have.

This claim will be dismissed.

**H.    Claim 8 – Consumer Fraud.**

This cause of action is captioned "Consumer Fraud," but neither the caption nor paragraphs 183-189 mention the source of the right being asserted. Doc. 1-1 at 44-45. The allegations appear to mirror in large part those made in Claim 7, although Plaintiffs allege here that the false representations were made in connection with merchandise such as real estate. *Id.*

Defendants treat this claim as being pled under the Arizona Consumer Fraud Act ("ACFA"), and argue in part that the allegations lack particularity under Rule 9(b). Doc. 10 at 15. Plaintiffs' response is ambiguous about whether their claim is pled under the ACFA. Doc. 18 at 16 ("While some courts have stated that consumer fraud claims must satisfy the particularity requirement of Rule 9(b), none appear to require satisfaction of the nine elements of a common law fraud cause of action."). The response cites to *Stratton v. American Medical Security, Inc.*, 2008 WL 2039313 at *8 (D. Ariz. 2008), case that involved an ACFA claim.

Rule 9 requires allegations of fraud be pled with particularity, even if they are brought under the ACFA. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action. While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." (internal quotation marks and citation omitted; alterations removed)).

The claim will be dismissed.

## I.      Claim 9 – Negligence Per Se.

This claim alleges that Defendants were per se negligent when they allowed, acquiesced in, or sent documents to the Maricopa County Recorder that contained false and unauthorized signatures in violation of A.R.S. § 39-161. Doc. 1-1 ¶ 191. It also alleges that Defendants violated A.R.S. §§ 41-312 and 41-313 by "allowing documents to be notarized by notaries who did not witness the signature[] or confirm authority." Doc. 1-1 ¶ 192.

Defendants argue that the allegations are conclusory, unsupported, and inadequate. Doc. 10 at 15-16. Defendants also argue the allegations are foreclosed by the trustee deed (*id.*), an argument already rejected by this Court as to other claims above.

Defendants fail to state with sufficient specificity the basis upon which the claim fails. An assertion that a claim is conclusory, unsupported, and inadequate can suggest a number of defects, not all of which are present here, and the Court will decline the invitation to guess what Defendants meant. The motion to dismiss on this ground will therefore be denied.

## J.      Claim 10 – Discharge of Debt.

This claim alleges that voluntary destruction of the note discharged the note pursuant to A.R.S. § 47-3604(A)(1); that Plaintiffs' obligations to the lender were

discharged by insurance, Fannie Mae, or others pursuant to A.R.S. §§ 47-3601 and 47-3602; and that the lender is required therefore to release the deed of trust. Doc. 1-1 at 46-47. In sum, the complaint alleges not that another party is subrogated to Defendants' rights by having paid Plaintiffs' debt, but rather that Plaintiffs' debt was extinguished.

Defendants argue that these claims fail the plausibility standard (Doc. 10 at 16), Plaintiffs disagree that plausibility is the standard on a motion to dismiss (Doc. 18 at 17), and Defendants' reply cites *Twombly* (Doc. 28 at 11).

The Court has discussed above the pleading requirements of *Twombly* and *Iqbal*, which are in fact the correct standards at the motion to dismiss stage. Plaintiffs have failed to allege sufficient facts plausibly to show the note was destroyed with the intent to discharge Plaintiffs' obligations or that the creditor was paid by someone with intent to discharge Plaintiffs' obligations. The claim will be dismissed.

### K. Claim 11 – Injunctive Relief.

This claim seeks a temporary restraining order ("TRO"), a preliminary injunction, and a permanent injunction. Doc. 1-1 at 47-48. Defendants move to dismiss on grounds that injunctive relief is not a cause of action, that moving for a TRO was procedurally improper, and that Plaintiffs fail to meet the test entitling them to injunctive relief. Doc. 10 at 17. The Court has already addressed the first argument with respect to Claim 1 and will adopt that reasoning here. The Court ruled on Plaintiffs' motion for TRO at the TRO hearing. As to the third ground, Defendants fail to include any analysis other than to quote the injunction standard from case law and assert that Plaintiffs cannot meet it. *Id.* The motion will be denied without prejudice.

### III. Motion to Quash Lis Pendens.

Defendants move to quash the lis pendens filed at Doc. 8 (Doc. 10), and Plaintiffs oppose (Doc. 18). The parties do not request oral argument, and the motion has been fully briefed (Docs. 10, 18, 28). Because the motion to quash is based solely on dismissal

with prejudice of the complaint (Doc. 10 at 17:20-21), and because some of the claims have not been dismissed, the motion to quash will be denied.

**IT IS ORDERED:**

1.      Plaintiffs' motion to remand (Doc. 20) is **denied.**

2.      Plaintiffs' motion for summary disposition (Doc. 31) is **denied**.

3.      Defendants' motion to dismiss (Doc. 10) is **granted in part and denied in part** as stated above.

4.      Defendants' motion to quash the lis pendens (Doc. 10) is **denied.**

5.      Plaintiffs shall file an amended complaint within **20 days** of this order.[12]

6.      The Court will set a case management conference by separate order.

7.      The parties should address briefing of the preliminary injunction motion in their Rule 26(f) report and at the case management conference.

Dated this 6th day of July, 2011.

_David G. Campbell_
_____
David G. Campbell
United States District Judge

_____

[12] Although Section II of Plaintiffs' response requested leave to amend only for Claim 7 (Doc. 18 at 16), Section III requests a general leave to amend for any claim deemed deficient (*id.* at 17:12-14). Defendants' reply does not oppose amendment. Doc. 28.