**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcus Silving, et al., | No. CV 11-0676-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Wells Fargo Bank, NA, et al., | |
| Defendants. | |

This action arises from First American Title Company's ("First American") foreclosure and trustee sale of Plaintiffs' house on January 11, 2011. Plaintiffs allege that Defendant U.S. Bank, N.A., as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2, bid on and purchased the foreclosed property. Doc. 40 at 17. A Trustee Deed was issued and recorded. *Id.* On March 10, 2011, Plaintiffs filed a complaint in Maricopa County Superior Court alleging eleven causes of action related to the foreclosure and trustee sale. Doc. 1-1 at 28-48. The case was removed to this Court on April 6, 2011. Doc. 1 at 4.

Defendants Wells Fargo Bank, N.A., d/b/a America's Servicing Company ("ASC"), U.S. Bank, as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2, and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants"), filed a motion to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). Doc. 10. The Court granted in part and denied in part Defendants' motion, and granted Plaintiffs leave to amend their complaint.

Doc. 35.  Plaintiffs filed their first amended complaint ("FAC") on August 5, 2011.  Doc. 40 at 23-41.  Defendants Wells Fargo Bank and MERS filed a motion to dismiss counts one through nine.  Doc. 51.  Defendant First American joined.  Doc. 60.  The motion has been fully briefed.  Docs. 55, 61.  For the reasons that follow, the Court will grant Defendants' motion.[1]

## I.   Legal Standard.

When analyzing arguments of failure to state a claim to relief under Rule 12(b)(6), the factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard requires sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

## II.   Discussion.

The Court will address each claim in Plaintiffs' FAC that Defendants seek to dismiss, along with any additional factual allegations relevant to the parties' arguments regarding dismissal.  The Court will discuss only the arguments it finds relevant and grounded in a colorable interpretation of the law.  The Court will deem any claims asserted in the original complaint and not reasserted in the FAC as waived.  *See Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir.1990) ("an

---

[1] Plaintiffs have not requested oral argument.  Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

amended pleading supersedes the original"); *King v. Atiyeh,* 814 F.2d 565 (9th Cir.1987); *see also* LRCiv 15.1.

.       **A.       Claim 1 – Declaratory Action.**

Plaintiffs seek a declaratory judgment voiding the trustee deed and rescinding the trustee sale and voiding the substitution of trustee, the assignment of the deed of trust ("DOT"), and the notice of trustee sale ("NOS") because each of these documents was defective, causing the sale to be carried out without legal authority.  Doc. 40 at 23-26. Defendants argue that Plaintiffs have not pled sufficient facts or legal theories to show that any of the above documents are null and void, and that to the extent the documents are, at most, voidable, Plaintiffs lack standing to bring such a claim.  Doc. 51 at 3.

**1.       The Substitution of Trustee.**

At issue is the appointment of First American as trustee on the DOT by means of a substitution of trustee ("the Substitution") recorded at the Maricopa County Recorder's Office on March 3, 2009.  *See* Doc. 40, ¶ 5.  Plaintiffs allege that the Substitution is void because the DOT shows MERS as the sole beneficiary, and Chet Sconyers, who signed the Substitution as an officer of MERS in favor of First American, was himself a First American employee, and he did not attach documentation to the Substitution showing that he had authority to sign on behalf of MERS.  *Id.*, ¶¶ 88-89.  Plaintiffs also argue that the Substitution falsely identifies ASC, not MERS, as the beneficiary on the DOT.  *Id.*, ¶ 89.

**a.       Lack of Authorization.**

Defendants make three arguments[2] for why the Court should dismiss Plaintiffs' lack of authorization claim: (1) Plaintiffs' allegations about Mr. Sconyers are conclusory because, notwithstanding his employment with First American, Mr. Sconyers could have been authorized by MERS to execute the Substitution, and Arizona law does not require

---

[2] Although Defendants list four arguments, the second of these pertains to the notice of sale, not the Substitution, and therefore will be discussed below.  *See* Doc. 51 at 8.

that documentation of authorization be recorded with a substitution, (2) lack of authorization would not, in any event, have the legal effect of voiding the Substitution because only MERS, not Plaintiffs, would have standing to challenge an unauthorized substitution, and (3) A.R.S. § 33-811(C) bars Plaintiffs' "lack of authorization claim." Doc. 51 at 4-6.

In its prior order, the Court noted that Plaintiffs' original claim regarding Mr. Sconyers' lack of authorization was not conclusory because it was based on the factual allegations that Mr. Sconyers worked for First American and did not present authorization papers from MERS.  Doc. 35 at 12-13.  The Court also noted that A.R.S. §§ 33-804(D) & (F) appear to require that the person executing a substitution of trustee have written authorization from the beneficiary.  *Id.* at 13.  The Court concluded that the authorization question was best addressed on summary judgment after the parties had an opportunity to present evidence regarding Mr. Sconyers' authorization.  Doc. 35 at 12-13.

The Court also declined to view U.S. Bank's deed as "conclusive evidence of compliance with the requirements of the Trustee's Sale" under A.R.S. § 33-811(B) because Defendants had failed to present evidence to show that U.S. Bank was a "purchaser for value without notice" of defects, as required by § 33-811(B) for this defense.  Doc. 35 at 11.  Defendants now argue only for a presumption of compliance as applied to general purchasers under the statute.  Doc. 51 at 5.  Without a showing from Defendants that the "conclusive evidence of compliance" standard applies, the Court is not persuaded that Plaintiffs have failed to allege a sufficient factual and legal basis to overcome the presumption of compliance and to make a plausible claim that Mr. Sconyers lacked authority to substitute First American as trustee on the DOT.

Defendants argue on the basis of contract law that even if Mr. Sconyers acted without authority from MERS, only MERS has standing to challenge or void the transaction.  Doc. 51 at 6 (citing Restatement (Second) of Contracts § 7).  Defendants cite several district court cases upholding transactions made by agents, one of which, *Livonia*

*Property Holdings, LLC., v. Farmington Road Holdings, LLC.*, 717 F. Supp. 2d 724 (E.D. Mich. 2010), directly addresses the standing issue.  Doc. 51 at 6.  *Livonia* found that a borrower did not have standing to challenge an assignment that did not change the borrower's obligation but only changed the entity to whom the borrower was obligated. 717 F. Supp. 2d at 735-36.  The Court finds that the standing analysis in *Livonia* is applicable here.   This finding is supported by *In Re MERS Litigation*, MDL Dkt. No. 09-2119-JAT, 2011 WL 4550189, (D. Ariz. Oct. 03, 2011), which is the prevailing authority in this district.  In *In Re MERS*, the court found that borrowers who were not parties to the assignment of their deed – and whose rights were not affected by it – lacked standing to challenge the assignment's validity because they had not alleged a "concrete and particularized injury that is fairly traceable to the challenged assignment." 2011 WL 4550189, at *5.  The court cited *Livonia*, which acknowledged the borrower's interest in avoiding foreclosure but stated that "the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated." *Id.* (citing *Bridge v. Aames Cap. Corp.,* No. 1:09 CV 2947, 2010 WL 3834059, at *4 (N.D. Ohio Sept. 29, 2010) (quoting *Livonia*, 717 F. Supp. 2d at 735)).  Here, Plaintiffs have alleged no facts to show they suffered a concrete and particularized injury from the Substitution that allowed First American, rather than MERS, to initiate foreclosure.  Nor have Plaintiffs alleged facts to show that MERS, as the principal party to the Substitution, has sought to have it voided for lack of authorization.  The Court will dismiss Plaintiffs' claim that the Substitution lacked authorization for lack of standing.

### b.    Beneficiary Identification.

Plaintiffs allege, as they did in their first complaint, that the Substitution is void because it misidentifies the beneficiary of the DOT as ASC rather than MERS.  The Court dismissed this claim in its prior order because Plaintiffs had not shown that misidentification of the beneficiary voids a substitution carried out by the correct beneficiary.  Doc. 35 at 13.  Plaintiffs have made no additional arguments to change this

result. The Court will grant Defendants' motion to dismiss this portion of Plaintiffs' claim.

## 2. Notice of Trustee Sale.

At issue is whether the NOS, recorded on March 6, 2009, is fraudulent and therefore void. Plaintiffs allege that the NOS is fraudulent because the signature of Joe Bueno of First American was certified by a notary in California when Joe Bueno was in Texas where First American is located. Doc. 40, ¶ 90. Plaintiffs also allege that the NOS is void because it falsely identified ASC as the beneficiary on the DOT.

### a. Signatory's Location.

The Court found in its prior order that because First American listed a Texas address in the NOS and Joe Bueno did not provide a separate location for himself, Plaintiffs' allegation that the California notary falsely certified Mr. Bueno's signature was not implausible. Doc. 35 at 14. The Court also found that Defendants had failed to show that A.R.S. § 33-808(E), which provides – with some exceptions – that errors in information on the NOS do not invalidate a trustee sale, applies to false certification of a signature. *Id.*

Defendants now argue on the basis of A.R.S. § 33-808(C) that Arizona law does not require that the signature of the trustee on the NOS be notarized. Doc. 51 at 9. Defendants also cite to a recent District of Arizona case rejecting an argument of fraud on the assignment of a deed of trust based solely on the fact that the notary had only acknowledged the signature after the fact. *Id.* (citing *Nichols v. Bosco*, CV-10-08172-PHX-FJM, 2011 WL 814916, at *13-14 (D. Ariz. Mar. 3, 2011)). That case found on the basis of A.R.S. § 33-503 that "Arizona law does not require a notary to actually witness a signature." *Nichols*, 2011 WL 814916 at *4. Arizona's Uniform Recognition of Acknowledgments Act, A.R.S. § 33-503, provides that for conveyances of deeds, the certificate of a person taking acknowledgment is sufficient if the signatory either appeared and acknowledged executing the instrument or was known to the person taking

acknowledgement, or the person taking acknowledgment had "satisfactory evidence" that that person had executed the instrument. A.R.S. § 33-503. Thus, even if Arizona law requires notarization of the NOS (an issue the Court need not decide), the signor need not appear before the notary. Allegations that Mr. Bueno was in Texas and the notary in California therefore are not sufficient to support a claim that Mr. Bueno's signature on the NOS was invalid. The Court will dismiss this portion of Plaintiff's claim.

### b.   Beneficiary Identification.

The Court already dismissed this portion of Plaintiffs' claim following Defendants' original motion to dismiss on the basis that A.R.S. § 33-808(E) provides that "[a]ny error or omission" of the name of the beneficiary "shall not invalidate a trustee sale." Doc. 35 at 15. Plaintiffs offers no new allegations in the FAC. The Court will again dismiss this portion of the claim.

### 3.   Assignment of the DOT.

At issue is whether the Assignment of the DOT from MERS to U.S. Bank was fraudulent and therefore void. Plaintiffs allege that MERS assigned both the DOT and the underlying note, but that the Assignment of the note was fraudulent because MERS never had possession of the note or authority to transfer it. Doc. 40, ¶ 91. Plaintiffs also argue that the Assignment is void because Deeann Gregory, who signed as a Certifying Officer of MERS, was a First American employee. *Id.*, ¶ 92-93.

### a.   MERS's Assignment of the Note.

Plaintiffs' claim that MERS lacked authority to assign the note is predicated on the allegation that the note and deed of trust were separated when the loan was created. *See* Doc. 40, ¶ 95. In its prior order, the Court stated that "MERS's possession or non-possession of the paper note is not the relevant inquiry" because the "note" is distinct from the "debt" under Arizona law and the "dispositive question is whether MERS had the right to transfer the lender's beneficial interest in the debt to U.S. Bank." Doc. 35 at 16-17. The Court cited to language Plaintiffs had included from the DOT stating that

MERS was the nominee of the original "Lender and Lender's successors and assigns," giving MERS the right "to exercise any or all" of the original or future lenders' interests. *Id.* at 17.  The Court concluded that Plaintiffs had failed to make a claim for why, in light of this authorization, MERS lacked the authority to transfer the beneficial interest in the debt. *Id.*

Plaintiffs now allege that MERS did not have the authority to assign the note under the contracts between the parties.  Doc 55 at 10 (citing to Doc. 40, ¶¶ 91, 93).  To the extent Plaintiffs argue that this constitutes a new allegation, Plaintiffs point to no separate contractual agreements between the parties and to no facts that would support a different interpretation of MERS's authority under its alleged contractual agreements and the authority in the DOT just cited.

Plaintiffs also cite to the Ninth Circuit's recent decision in *Cervantes v. Countrywide Home Loans, Inc.*, 656 F. 3d 1034 (9th Cir. 2011), as supporting "a finding of the split note and deed of trust."  Doc. 55 at 10.  It is not clear, however, how Plaintiffs believe this factual finding, to the extent that the Ninth Circuit found it existed in that case, lends support to Plaintiffs' claim.  In *Cervantes*, the Ninth Circuit addressed the same allegation that Plaintiffs make here, that the "split" in the note and deed of trust that occurs when MERS holds the deed of trust on behalf of the lender invalidates further transfers.  656 F. 3d at 1038-39.  The Ninth Circuit concluded that "the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders." *Id.* at 1044.  Rather than add new legal authority to Plaintiffs' claim, *Cervantes* reaffirms what the Court has already stated – that Plaintiffs have failed to allege sufficient facts to support a claim that MERS' Assignment of the DOT and note was fraudulent where the DOT expressly made MERS the agent of the lenders.  The Court will again dismiss this portion of Plaintiffs' claim.

1

**b.      Authorization.**

2      Defendants argue that Plaintiffs provide insufficient facts to state a claim that

3  Deeann Gregory was not authorized to sign the Assignment on behalf of MERS.  Doc. 51

4  at 11.  Plaintiffs make two factual allegations: (1) that MERS has no employees who

5  execute assignments, and (2) that Ms. Gregory signed paperwork both as a Certifying

6  Officer of MERS and as an employee of First American.  Doc. 40, ¶¶ 91-92.  From these

7  facts, Plaintiffs draw the legal conclusion that Ms. Gregory "has not been properly

8  authorized to be a Certifying Officer for MERS."  *Id.*, ¶ 93.

9      Defendants first argue that the law does not require a signatory to be a MERS

10 employee to be authorized to execute deed assignments on behalf of MERS.  Doc. 51 at

11 11.  Plaintiffs cite no legal authority that would suggest otherwise.  The Court finds that

12 without a specific legal basis, Plaintiffs' first factual allegation – that MERS has no

13 employees who perform the functions Ms. Gregory performed in executing the

14 Assignment – is insufficient to state a plausible lack of authorization claim.  MERS's

15 lack of employees only leads to the conclusion that MERS had to use an authorized agent

16 to assign the DOT.

17     Here, unlike in their lack of authorization claim for the Substitution, Plaintiffs cite

18 no statute requiring written authorization for an agent acting on behalf of the lender or the

19 lender's designee (in this case MERS) to assign the deed of trust.  Instead, Plaintiffs'

20 conclusion that Ms. Gregory was not properly authorized to act as such an agent is based

21 solely on the allegation that Ms. Gregory represented herself as both an employee of First

22 American and as a Certifying Officer of MERS.

23     Defendants cite cases from other districts holding that a signatory's dual status as

24 an employee of a mortgage or title company and as an agent of MERS does not invalidate

25 a deed assignment, and that the practice of using an agent to execute a document is

26 commonplace in deed transfers.  Doc. 51 at 11.[3]  Although these cases are not binding on

27 

28     [3] Defendants cite two district court cases.  The first of these, *Bain v. Metropolitan*

this Court, Plaintiffs bear the burden of stating a sufficient legal basis for each of their claims, and Plaintiffs have cited no legal basis for the proposition that an employee of the title company cannot also act as an agent for MERS.  The Court agrees with Defendants that Plaintiffs allegation that Ms. Gregory claimed to be both an employee of First American and a Certifying Officer of MERS is an insufficient basis to state a plausible claim that Ms. Gregory was not properly authorized to execute the deed transfer on behalf of MERS.  The Court will dismiss this portion of Plaintiffs' claim.

### 4.      The Trustee Deed and Sale.

The FAC alleges that the trustee deed is void because the Substitution, NOS, and Assignment are void.  Doc. 40, ¶ 104-06.  Because the trustee deed is void, Plaintiffs assert, the trustee sale must be rescinded.  *Id.* at 106.  Defendants argue that because the Substitution, NOS, and Assignment are valid, the trustee deed is also valid, as is the sale.  Doc. 51 at 13.  Because the Court will dismiss Plaintiffs' claims that the Substitution, NOS, and Assignment are void, the Court will dismiss Plaintiffs' claims that the deed also is void and that the sale must be rescinded.

### B.      Claim Two: Quiet Title.

Plaintiffs make a quiet title claim, alleging that "Plaintiff Deborah Bader's and/or Marcus Silving's interest in the property is superior to the interests of any Defendant."  Doc. 40, ¶ 129.  Plaintiffs base this claim primarily on arguments already rejected by this Court, namely that the DOT did not authorize MERS to make assignments, that the Assignment by MERS was invalid for lack of authorization, and that the separation of the note and deed at the time of the loan invalidated any assignments of interest beyond the

*Mortgage Group, Inc.*, No. CO9-0149-JCC, 2010 WL 891585 (W. D. Wash. Mar. 11, 2010), does not directly parallel the instant case because in *Bain* MERS had entered into a written contract with the entity for which the signatory worked, authorizing that entity's employees to execute foreclosure documents on behalf of MERS.  *Id.*, at *1.  In the second, *Chua v. IB Property Holdings*, LLC, No. CV 11-05894 DDP (SPx), 2011 WL 3322884 (C. D. Cal. Aug. 1, 2011), the court rejected a claim that an officer of a mortgage company could not also sign documents on behalf of MERS because "Plaintiffs have not identified a relevant legal authority prohibiting one individual from working for both [the mortgage company] and MERS or from acting as an agent for both."  2011 WL 332284, at *2.

original lender, Capital Mortgagebanc.  Doc. 40, ¶¶ 116, 117, 118-121.  Plaintiffs also allege that Defendants' interests in the Property are inferior to their own because, as already argued in claim one, Defendants executed the Substitution, the Assignment, the NOS, and the DOT without legal authority.  *Id.*, ¶ 128.

Defendants argue that Arizona law requires Plaintiffs first to allege a valid title (Doc. 51 at 13 (citing *Eason v. IndyMac Bank, FSB*, No. CV 09-1423-PHX-JAT, 2010 WL 4573270, at *2 (D. Ariz., Nov. 5, 2010)), and, second, to allege that Defendants make claims adverse to Plaintiffs (*id.* at 14 (citing A.R.S. § 12-1102(4)).  Defendants argue both that Plaintiffs have made no valid claim to title from which they can assert a quiet title action and that Plaintiffs allegations of superior title to an adverse claimant fail as to each Defendant.  Doc. 51 at 13-14.

Following *Eason*, the Court agrees that A.R.S. § 12-1101 requires Plaintiffs to show title before they can proceed with a quiet title action.  *See* 2010 WL 4573270 at *2 (citing *Verde Water & Power Co. v. Salt River Valley Water Users' Ass'n,* 197 P. 227 (Ariz.1921)).  As Defendants argue, this requirement necessarily invalidates any claim of superior title in Plaintiff Marcus Silving because Plaintiffs allege in their own complaint that Mr. Silving quit-claimed his interest in the Property to Defendant Deborah Bader in April of 2006.  *See* Doc. 40, ¶ 114.  Accordingly, the Court will grant Defendants' motion to dismiss all claims to quiet title made on behalf of Defendant Silving.

Defendants further argue that Deborah Bader is not entitled to quiet title because the Trustee's sale divested her of any claim to title.  Doc. 51 at 13.  Because the Court has dismissed Plaintiffs' claims requesting a declaratory judgment that the Trustee's sale and DOT are void, the Court agrees that Ms. Bader has no valid title upon which to base her quiet title claims.  The Court will grant Defendants' motion to dismiss Ms. Baders's quiet title claims.

### C.    Claim Three: Breach of the Duty of Good Faith and Fair Dealing.

Plaintiffs make a number of allegations claiming that Defendants have breached

the covenant of good faith and fair dealing under contract law.  Doc. 40, ¶¶ 132-139.  In its earlier order, the Court found that the only applicable contracts in this case are the DOT and the note.  Doc. 35 at 22.  The Court also dismissed all alleged breaches of these contracts "other than the allegation that the foreclosure using defective instruments violated the covenant."  *Id.*  Plaintiffs have reasserted this allegation.  Doc. 40, ¶ 137(c).

Defendants argue that Plaintiffs claims regarding faulty documents are subject to dismissal and therefore "cannot support a breach of the covenant of good faith and fair dealing."  Doc. 51 at 16.  Because the Court will dismiss Plaintiffs' faulty documents claims, the Court also will dismiss this portion of Plaintiffs' claims.

Plaintiffs have made new allegations that Defendants have breached the covenant of good faith and fair dealing by (1) "hiding the identity of the true beneficiary, lender/creditor, Note Holder, and party entitled to payment from Plaintiffs," (2) "allowing an entity, not the Note Holder, to enforce payment and seek foreclosure," (3) "foreclosing in direct contravention to contract terms," and (4) "foreclosing in violation of the deed of trust statutes, which are a part of every deed of trust."  *Id.*, ¶ 137(a)-(c), (e).

Defendants correctly state that the DOT permits the note and the DOT to be sold "one or more times without notice to the Borrower."  DOT "Uniform Covenants" # 20, Doc. 1-1 at 66 (cited by Defs., Doc. 51 at 15).  The Court therefore will grant Defendants' motion to dismiss Plaintiffs' claim that Defendants breached implied covenants by withholding the identities of the beneficiary or note holder.  Additionally, the allegation that Defendants hid the identity of the lender/creditor fails because Defendants themselves were the creditors, and to the extent that they did not know the identity of the lender because Capital Morgagebanc sold the note, the same defense applies that Defendants had no express or implied contractual obligation to inform Plaintiffs of such a sale.  All claims regarding the "hiding" of identities related to the note and DOT are therefore dismissed.

Defendants also correctly cite to the DOT as making provisions for a "Loan

Servicer" who "collects Periodic Payments under the Note and this Security Instrument and performs other mortgage loan servicing obligations."  Doc. 51 at 15 (quoting DOT "Uniform Covenants" # 20, Doc. 1-1 at 66).  Plaintiffs' claim that Defendants breached their covenant of good faith and fair dealing because they allowed an entity other than the note holder to enforce payment and seek foreclosure is therefore dismissed.

Defendants argue that Plaintiffs' remaining claims – that all Defendants foreclosed in contravention of contract terms and that all Defendants acted in violation of the deed of trust statutes – lack sufficient particularity to state a claim because they fail to identify specific contract provisions that Defendants violated or to identify specific violative conduct.  Doc. 51 at 16.  In their reply, Plaintiffs refer to ¶¶ 9-10 of the FAC which contains a discussion of contract terms.  Doc. 55 at 14.  Plaintiffs also cite to ¶ 137 which contains the list of claims already stated above.  Doc. 55 at 14.  The Court agrees that, other than the claims relating to the use of fraudulent documents, Plaintiffs have not set forth any factual allegations related to the specific contract provisions violated.  Instead, Plaintiffs have left Defendants to guess at which of the contract provisions listed in ¶¶ 9-10 are in dispute.  The Court will therefor dismiss Plaintiffs' remaining claims that all Defendants foreclosed in contravention of contract terms and that all Defendants acted in violation of the deed of trust statutes.

### D.    Count Four: Breach of Contract.

In addition to their claims that Defendants breached the implied covenant of good faith and fair dealing, Plaintiffs assert that Defendants pursued the trustee sale "in violation of the contracts and applicable law."  Doc. 40 at 31.  In its earlier order, the Court found that "the only contracts clearly identified in the complaint are the deed of trust and note."  Doc. 34 at 23.  Accordingly, the Court construed the claims in count four to relate only to those contracts.  *Id.*  Plaintiffs have re-alleged the same claims.  Doc. 40, ¶¶ 140-146.

Defendants now argue that "[e]ven if the Court assumed the contracts are the Note

and DOT, the FAC does not clarify 'which promises were breached and how,' much less which of the Defendants are alleged to have breached them.  Doc. 51 at 17 (quoting from the Court's order, Doc. 35 at 23).  Defendants are correct.  In its earlier order, the Court stated that "Claim 4's allegations are unclear as to which contracts are involved and which actions constituted breach, even though the allegations incorporate 140 prior paragraphs."  Doc. 35 at 23.  The Court went on to state that allegations made at large throughout the complaint and later pointed to in Plaintiffs' response were insufficient to state a claim under Count 4 because "the complaint must speak for itself and should not need the aid of additional papers to explain its meaning."  *Id.*  Plaintiffs have made no apparent changes to the original complaint.  Compare Doc. 1-1, ¶¶ 141-47 with Doc. 40, ¶¶ 140-46.  Even accepting from the Court's prior order that the contracts at issue are the note and DOT, Plaintiffs have provided no clarity as to which provisions of those contracts are in dispute or which alleged actions of individual Defendants violated them.  Plaintiffs respond that they had no duty under the Court's prior order to clarify any allegations unless they wanted to extend their claims beyond the note and DOT.  Doc. 55 at 15-16.  The Court does not agree.  Applying the Court's admonition that the complaint must speak for itself, the Court finds that mere identification of the contracts without reference to the provisions violated or the actions of specific Defendants that violated them is insufficient to state a claim for breach of contract.  Accordingly, the Court will dismiss Count four.

E.     **Count Five: Negligent Performance of Undertaking.**

Plaintiffs allege that ASC and U.S. Bank put in place modification and forbearance programs for distressed borrowers, encouraged Plaintiffs to apply, and negligently managed the programs by failing to staff them with sufficient and competent people, failing to provide adequate contact methods, failing to provide adequate methods for submitting information, making repeated requests for the same information, making inaccurate calculations and determinations, failing to follow through on "written, verbal

1    and implied promises," and waiting until less than 24 hours before the trustee sale to

2    make Plaintiffs aware that the sale would proceed rather than be postponed as it was

3    several times before.  Doc. 40, ¶¶ 150-158.  Plaintiffs also allege that they relied on

4    Defendants to administer the modification and forbearance programs with due care.  *Id.*,

5    ¶ 159.  Plaintiffs allege that Defendants' negligence resulted in foreclosure, loss of

6    equity, a two-year delay in principal reduction payments, and damages to Plaintiffs'

7    credit rating.  *Id.*, ¶  160.

8          Defendants argue, as they did in their original motion to dismiss, that Plaintiffs

9    have failed to establish a legal duty upon which to base their negligence claim.  Doc. 51

10   at 17-18.  The Court addressed this argument in its earlier order and found that the cases

11   Defendant relied upon were unpersuasive.  Doc. 35 at 24.  *McCalister v. Citibank*, 829 P.

12   2d 1253, 1258 (Ariz. App. 1992), only found that a bank did not owe a duty to an

13   ordinary depositor beyond that of debtor to creditor "absent any special agreement," and

14   the Court found that Plaintiffs had alleged special agreements in the form of written,

15   verbal, and implied promises.  Doc. 35 at 24.  *Renteria v. United States*, 452 F. Supp. 2d

16   910, 921-22 (D. Ariz. 2006), found that under Arizona law, the Good Samaritan Doctrine

17   applies to economic harm and that lenders are not excepted from liability.  Doc. 35 at 24-

18   25.

19         Defendants now make the argument, offered for the first time in reply to their

20   original motion to dismiss and therefore not addressed by the Court at that time, that

21   Plaintiffs have failed to establish "increase in the risk of harm" or "reliance" as required

22   by the Good Samaritan Doctrine.  Doc. 51 at 19.[4]  The Court agrees that Plaintiffs have

23

24         [4] The Good Samaritan Doctrine states that one who undertakes, gratuitously or for
     consideration, to render services to another which he should recognize as necessary for
25   the protection of the other's person or things, is subject to liability to the other for
     physical harm resulting from his failure to exercise reasonable care to perform his
26   undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b)
     the harm is suffered because of the other's reliance upon the undertaking.  *See*
27   Restatement (Second) of Torts § 323.

28

- 15 -

failed to allege facts to establish either of these elements.

Defendants cite to *Renteria* for the proposition that Plaintiffs were not reasonable to rely on a possible loan modification. *Id.* (citing to 452 F. Supp. 2d at 921–22). In *Renteria*, the court found that plaintiffs were not legally entitled to rely upon expectations of securing a loan from the Farm Service Agency ("FSA") in order to plant crops in 2000 when the loan application could have been denied or, if approved, not funded until it was too late to plant crops that year. 452 F. Supp. 2d at 916, 921. Conversely, the court found that plaintiffs were entitled to rely upon timely distribution of loan payments "at the point when the loan was approved." *Id.* at 917, 922. Similarly, the court found that plaintiffs were entitled to rely on the FSA "to use reasonable efforts to timely distribute . . . funds" approved for distribution following plaintiffs' bankruptcy. *Id.* at 923.

Here, unlike *Renteria*, in which plaintiffs reasonably relied upon the timely provision of already-approved loan distributions, Plaintiffs have alleged no approval or guarantee of a loan modification. Plaintiffs allege that Defendants made "promises to help," and that borrowers who were unable to pay their mortgages were "encouraged, even urged, to submit a loan modification package." Doc. 40, ¶¶ 153, 150. This amounts to no more, however, than the expectations of receiving an as-yet unapproved loan that the court in *Renteria* found insufficient to create legal reliance. Plaintiffs also have not alleged facts to show that any failure on the part of Defendants to follow through with a loan modification package increased the harm brought about by Plaintiffs' default. Plaintiffs acknowledge that while Defendants undertook to modify their loan Plaintiffs were "unable to resolve their default, pay down the principle, or avoid decimating their credit." *Id.* at ¶ 152. Although Plaintiffs were dissatisfied with Defendants' efforts to help them resolve these issues prior to foreclosure, Plaintiffs allege no facts showing that Defendants obligated themselves to a particular loan modification plan or that their failed efforts to arrive at one increased the harms to Plaintiffs resulting from their inability to make payments, including foreclosure, loss of equity, and damage to credit. The Court

will grant Defendants' motion to dismiss Plaintiffs' negligent performance claim.

### F.     Count Six: Fraudulent Concealment.

Plaintiffs allege that Defendants knew but concealed truths from Plaintiffs that resulted in their suffering pecuniary loss.  Doc. 40, ¶¶ 166-68.  Plaintiffs list as these concealed "truths" that Defendants used unauthorized signatures on foreclosure documents, did not have adequate and competent staff to process loan modifications, failed to follow through on written and verbal promises, failed to follow through on contractual obligations, foreclosed with little or no notice to Plaintiffs, and hid from Plaintiffs the identities of the note holder and others.  *Id.*, ¶ 166(a)-(f).

Defendants argue that the Court previously dismissed, and should again dismiss, Plaintiffs' fraudulent concealment claims for lack of particularity.  Doc. 51 at 20.  The Court found that Plaintiffs had not alleged the time and place or specific content of the alleged misrepresentations and had not shown how Defendants had prevented Plaintiffs from learning any of the allegedly concealed truths.  Doc. 35 at 26-27.  Plaintiffs argue that they have since added ¶¶ 166(c) and 167 to cure these defects.  Doc. 55 at 18-19.  In ¶ 166(c), Plaintiffs allege that ASC sent a letter to Plaintiffs on July 13, 2010, falsely stating that their "primary goal" was to help Plaintiffs keep their home.  Doc. 40, ¶ 166(c).  In ¶ 167, Plaintiffs again assert that Defendants – generally – concealed truths by falsifying foreclosure documents.  Doc. 35, ¶ 167.  Plaintiffs add that Defendants made the allegedly fraudulent documents appear legitimate by recording them.  *Id.*  They also add that Defendants set up telephone systems to ensure that Plaintiffs did not have contact with the same person twice.  *Id.*  Plaintiffs allege other concealments, including the identities of the note holder, beneficiaries, and securities investors associated with the MERS system and the securitization process.  *Id.*

Defendants argue, and the Court agrees, that the letter from ASC merely references an aspirational statement and it is not a sufficient factual basis for a concealment claim.  *See* Doc. 61-1 at 15.  Defendants also argue that ¶ 167 is "just a

laundry list of broad, unsupported allegations against *all* Defendants." Doc. 61-1 (emphasis in brief). The Court agrees that ¶ 167 does not cure the lack of particularity noted in Plaintiffs' original complaint. Nor does ¶ 167 make sufficient allegations of how Defendants concealed truths from Plaintiffs. The Court is not persuaded that recording documents is an act of concealment; nor have Plaintiffs alleged facts to show how Defendants' telephone practices led to the concealment of facts upon which Plaintiffs relied. Plaintiffs have also not alleged facts to show how concealment of such things as the identities of the note holder or investors led to their pecuniary loss. Additionally, as the Court noted in its prior order, the alleged wrong here is preventing Plaintiffs from learning material facts, not engaging in the underlying actions. *See* Doc. 35 at 25. Even considering Plaintiffs' additions in the FAC, the Court once again finds that Plaintiffs have pled insufficient facts to support their fraudulent concealment claims. Accordingly, the Court will dismiss these claims.

### G.   Count Seven: Fraud.

Plaintiffs fraud claims rest entirely on the allegations, previously discussed in relation to count one, that the Substitution, NOS, and Assignment were not legally signed or authorized. Doc. 40, ¶¶ 170-173. Defendants argue that these claims should be dismissed for the same reasons it argued that Plaintiffs' previous, factually-identical claims in count one should be dismissed. Doc. 51 at 22. Because the Court will dismiss Plaintiffs' claims in count one, the Court will grant Defendants' motion to dismiss Plaintiffs' fraud claims.

### H.   Count Eight: Consumer Fraud.

Plaintiffs assert consumer fraud under A.R.S. § 44-1521. Doc. 55, ¶ 183. This statute pertains to the use of "any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact" in connection with the sale of merchandise. Ariz. Rev. S. § 44-1522(a). Plaintiffs claim that Defendants have engaged in such deceptions,

misrepresentations, and concealments in connection with the foreclosure sale.  Doc. 37, ¶ 184.  Plaintiffs' claims rest on the allegations, previously discussed in count one, that the Substitution, NOS, and Assignment were not legally signed or authorized, leading to foreclosure on fraudulent documents.  Doc. 37, ¶¶ 185-87.  In addition, Plaintiffs' claims rest on the allegations, previously discussed in count three, that Defendants engaged in a system that hid the identity of the note holder and beneficiary from Plaintiffs.  *Id.*, ¶ 187.

Defendants argue that these claims should be dismissed because the allegations lack particularity, they are based solely on the "show-me-the-authorization" claims that should be dismissed, there is no evidence that the "sale of merchandise" in A.R.S. § 44-1521 pertains to the nonjudicial foreclosure on the home, the identities of the note holder and beneficiary are not material because the DOT permits assignments without notice to the borrower, and Plaintiffs' consumer fraud claim is time barred.  Doc. 51 at 22-24.

To the extent that Plaintiffs' consumer fraud claim rests on allegations of the use of flawed documents, the Court will dismiss this claim for the reasons already discussed in count one.  To the extent that Plaintiffs' claim rests on concealment of the identity of the note holder or beneficiary, the Court will dismiss this claim for the reasons already discussed in count three.  The Court need not address whether A.R.S. § 44-1521 applies to the foreclosure sale or whether Plaintiffs claim is time-barred.  The Court will dismiss Plaintiffs' consumer fraud claims.

**I.      Count Nine: Negligence *Per Se*.**

Plaintiffs assert claims of negligence *per se*, alleging that Defendants allowed, acquiesced in, or sent documents to the Maricopa County Recorder that contained false and unauthorized signatures in violation of A.R.S. § 39-161, that they recorded false documents claiming an interest in property in violation of A.R.S. § 33-420, and that they allowed notaries to notarize documents without witnessing signatures in violation of A.R.S. § 41-312 and § 41-313.  Doc. 40.

Defendants argue that the Court should dismiss each of these claims.

Doc. 51 at 24. Defendants cite Arizona case law stating that "[a] person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se." Doc. 51 at 24 (citing *Good v. City of Glendale*, 150 Ariz. 218, 221, 722 P.2d 386, 389 (Ct. App. 1986)). Defendants argue that Plaintiffs have not made proper claims under the statutes, nor were the statutes on which Plaintiffs rely "enacted for the protection and safety of the public." Doc. 51 at 24-25. The Court agrees.

**1.     A.R.S. § 39-161.**

Defendants argue that A.R.S. § 39-161 prohibits the recording of instruments that are known to be "false or forged" and that Plaintiffs have only alleged that the documents in this case were unauthorized by the principal. Doc. 51 at 25. Because the Court will dismiss the substantive claims related to the use of unauthorized documents upon which this claim is based, the Court need not decide whether the alleged use of "false and unauthorized signatures" (Doc. 39, ¶ 39) is grounds for a claim that the instruments were known to be "false or forged" under A.R.S. § 39-161. The Court will grant Defendants' motion to dismiss this portion of Plaintiffs' claim.

**2.     A.R.S. § 33-420.**

Defendants argue that A.R.S. § 33-420 prohibits the recording of instruments that falsely purport to create an interest in real property and that the Substitution, NOS, and Assignment in this case do not qualify because they do not purport to create an interest in property. Doc. 51 at 25. Whether or not the recorded documents purport to create an interest in real property, the Court has already concluded that it must dismiss Plaintiffs' claims that Defendants used false or unauthorized documents upon which this claim is based. The Court will dismiss this portion of Plaintiffs' claim.

**3.     A.R.S. § 41-312 and § 41-313.**

Defendants argue that Plaintiffs do not cite to any portion of A.R.S. § 41-312 and § 41-313 that requires a notary to witness a signature or confirm the authorization of a principal. Doc. 51 at 25. Plaintiffs respond that "[n]otaries are employed in order to provide a level of assurance to individuals involved in transactions, that the individual

who purports to sign the document, is actually that individual" and that this is to protect the public from forgery and dishonesty.  Doc. 55 at 24.  Without citing to specific violations of the relevant statute, however, the Court agrees with Defendants that Plaintiffs have failed to state a negligence *per se* claim under Arizona's notary statutes. The Court will dismiss this portion of Plaintiffs' claim.

**IT IS ORDERED:**

1.     Defendants' motion to dismiss (Doc. 51) is **granted**.

2.     The Clerk of the Court is directed to **terminate** this action.

Dated this 18th day of January, 2012.


_____
David G. Campbell
United States District Judge